**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ALVIN HARDMON, | CASE NO. 1:10-cv-2558 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE VECCHIARELLI |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

Plaintiff, Alvin Hardmon ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying Plaintiff's applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("the Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On July 6, 2006, Plaintiff submitted applications for DIB and SSI and asserted a disability onset date of April 1, 2005. (Tr. 35.) The applications were denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 35.) A hearing was scheduled for November 20, 2008, but it was postponed at Plaintiff's request. (Tr. 35.) On July 15, 2009, an ALJ held Plaintiff's hearing by video conference. (Tr. 35.) Plaintiff appeared, was represented by an attorney, and testified. (Tr. 35.) A vocational expert ("VE") also appeared and testified. (Tr. 35.) On August 7, 2009, the ALJ found Plaintiff not disabled. (Tr. 42.) On September 13, 2010, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On November 9, 2010, Plaintiff timely filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) On March 5, 2011, Plaintiff filed his Brief on the Merits. (Doc. No. 15.) On May 18, 2011, the Commissioner filed his Brief on the Merits. (Doc. No. 18.) Plaintiff did not file a Reply Brief.

Plaintiff asserts two assignments of error: (1) the ALJ improperly assessed the credibility of Plaintiff's subjective complaints of pain; and (2) the ALJ based his residual functional capacity ("RFC") determination on his personal medical opinion rather than the record evidence.[1]

---

[1] Plaintiff also states in one sentence within his argument section regarding the ALJ's RFC assessment, and without any explanation, that the ALJ "failed to find 'pain' a severe impairment." (Pl.'s Br. 9.) The Court will not speculate as to what Plaintiff's argument on this point might be; accordingly, this argument lacks merit. *See McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Plaintiff was 44 years old on the alleged disability onset date (Tr. 40), and was 48 years old on the date of his hearing (Tr. 12).  He has at least a high school education and is able to communicate in English.  (Tr. 40.)  He has past relevant work as a production machine operator and delivery driver.  (Tr. 40.)

### B.   Medical Evidence

On December 14, 2005, Plaintiff underwent a physical examination by Dr. Thomas Fuller, M.D. (Tr. 242-43.)  Dr. Fuller noted that Plaintiff's medical history included, among other things, hypertension, degenerative disc disease of the spine, and cervical radicular pain.  (Tr. 242.)  Upon examination, Dr. Fuller found Plaintiff had a tender right sciatic notch; Plaintiff's straight leg raise on the left was positive at 40 degrees; and a straight leg raise on the right was "impossible."  (Tr. 243.)  X-rays showed moderate osteoarthritis in the right hip, mild osteoarthritis in the left hip, and mild facet hypertrophy in the lower lumbar spine.  (Tr. 243.)

On January 13, 2006, Plaintiff was examined by resident physician Dr. Sepideh Haghpanah at the Department of Physical Medicine and Rehabilitation, under the supervision of Dr. Michael Harris, M.D., and upon referral from Dr. Fuller, for a

---

at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 868 (6th Cir. 2006); *see also Erhart v. Sec'y of Health & Human Servs.*, 989 F.2d 534, 537 n.5 (7th Cir. 1992) (applying waiver rule because judges need not devote time to "discussion of argument, raised if at all, 'in a very opaque manner'").

consultation on Plaintiff's low back pain. (Tr. 311.) Dr. Haghpanah reported the following upon physical examination. Plaintiff had normal range of motion in his back and left hip, but limited range of motion with pain in his right hip. (Tr. 313.) A palpatory examination of Plaintiff's back revealed no evidence of tenderness, spasms, or trigger points; however, Plaintiff had a positive straight leg raise on the right that induced hip pain and radicular pain to his ankle. (Tr. 313.) Plaintiff's motor strength was normal in his upper and lower extremities except to the extent that his hip pain limited him. (Tr. 313.) Dr. Haghpanah diagnosed Plaintiff with degenerative joint disease in both hips with significant limitations of movement in the right hip. (Tr. 313.) Dr. Haghpanah recommended that Plaintiff take Voltaren and Vicodin, consider injection treatments for the right hip, use an assistive device, and see an orthopedic physician to obtain information on surgical options. (Tr. 313.)

On March 9, 2006, Plaintiff presented to Dr. J.D. Eubanks, M.D., with complaints of right buttock and posterolateral thigh pain and associated numbness that sometimes extended down to his ankle. (Tr. 320.) Dr. Eubanks indicated that Plaintiff reported the following. Plaintiff had suffered his pain for the past several months, and the pain presently rated at 9 on a scale between 1 and 10 in severity. (Tr. 320.) The pain was not caused by a traumatic event. (Tr. 320.) The week before, his pain was so severe that he was unable to walk. (Tr. 320.)

Dr. Eubanks reported the following upon physical examination. Plaintiff favored his right side when he walked, but he had full motor strength and negative straight leg raises with both legs. (Tr. 320.) He complained of pain in his right hip. (Tr. 320.) Dr. Eubanks noted that Plaintiff's history and examination were "consistent with possible

4

piriformis syndrome vs. sciata," and that he would begin Plaintiff's treatment with "simple things" such as physical therapy. (Tr. 320.)

On May 19, 2006, Plaintiff presented to Dr. Harris for a follow up on his right hip pain. (Tr. 331.) Dr. Harris reported the following. An MRI of Plaintiff's right hip on January 23, 2006, revealed moderate to severe osteoarthritis with an acetabular labral tear and subchondral cystic changes. (Tr. 331.) Plaintiff's pain had not resolved. (Tr. 331.) The orthopedics department, however, recommended that Plaintiff continue with conservative treatment. (Tr. 331.) Plaintiff reported that he took Vicodin and Voltaren, which seemed to help him, but that he was "very limited" with standing on his right side. (Tr. 331.) Plaintiff had marked limitations in the range of internal rotation in his right hip, but there were no indications of instability. (Tr. 331.) Dr. Harris recommended that Plaintiff obtain a steroid injection in his right hip, continue taking Vicodin and Voltaren, and undergo physical therapy. (Tr. 332.)

On May 24, 2006, Plaintiff obtained a steroid injection in his right hip. (Tr. 262.) On July 26, 2006, Plaintiff presented to Dr. Shu Que Huang, M.D., for a follow up on his right hip pain. (Tr. 335.) Dr. Huang observed that Plaintiff used a cane to ambulate. (Tr. 335.) Dr. Huang reported that Plaintiff's steroid injection in May decreased Plaintiff's pain for only a couple of days, but provided "in general 25-30% relief after injection compared to his baseline." (Tr. 335.) Dr. Huang further reported that Plaintiff's pain was "better controlled on Oxycontin," and that Plaintiff rated his present pain at 5 on a scale to 10 in severity. (Tr. 335.)

On August 25, 2006, state agency reviewing physician Dr. W. Jerry McCloud, M.D., assessed Plaintiff's physical RFC as follows. (Tr. 341-48.) Plaintiff could lift and

5

carry 20 pounds occasionally and 10 pounds frequently.  (Tr. 342.)  He could sit, stand, and walk for a total of about 6 hours in an 8-hour workday with normal breaks.  (Tr. 342.)  His abilities to push and pull were not limited except to the extent that he was limited in his abilities to lift and carry.  (Tr. 342.)  He could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; but he could never climb ladders, ropes, and scaffolds.  (Tr. 343.)  He had no manipulative, visual, communicative, and environmental limitations.  (Tr. 344-45.)  Dr. McCloud opined that Plaintiff's symptoms were attributable to a medically determinable impairment, but that Plaintiff's symptoms were disproportionate to what should be expected.  (Tr. 346.)  Dr. McCloud specifically noted that Plaintiff's need for a cane to walk and alleged inability to lift more than 10 pounds were not supported by the medical evidence.  (Tr. 246.)

On September 8, 2006, Plaintiff presented to Dr. Haghpanah for a follow up on his right hip pain.  (Tr. 352.)  Dr. Haghpanah indicated that Plaintiff reported the following.  Plaintiff's pain was worse, rating at 7 out of 10 in severity.  (Tr. 352.)  The pain was sharp, located in his right hip, and radiated to his back and right thigh.  (Tr. 352.)  The pain became worse with activity and better with rest.  (Tr. 352.)  Plaintiff used a cane for ambulation.  (Tr. 352.)  The steroid injection in May 2006 provided Plaintiff with some relief, so Plaintiff hoped to repeat the procedure.  (Tr. 352.)

On November 28, 2006, state agency reviewing physician Dr. Maria Congbalay, M.D., reviewed Dr. McCloud's August 25, 2006, assessment of Plaintiff's physical RFC and affirmed Dr. McCloud's findings.  (Tr. 362.)

On June 1, 2007, Plaintiff presented to Dr. Haghpanah for a follow up on his right hip pain.  (Tr. 392.)  Dr. Haghpanah indicated that Plaintiff reported the following.

6

Plaintiff had significant pain relief in his right hip after a second steroid injection, but his left hip hurt and recently became worse. (Tr. 392.) He also suffered occasional pain in his right calf. (Tr. 392.) He had "transient" relief of pain in his left hip after a steroid injection. (Tr. 393.) His pain prevented him from working. (Tr. 393.) Dr. Haghpanah noted that Plaintiff's Oxycontin medication controlled Plaintiff's pain at a level of 2 out of 10 in severity. (Tr. 394.) Dr. Haghpanah recommended that Plaintiff continue to take Voltaren and Oxycontin, continue to use a cane on the right side to alleviate the pain on the left side, undergo an x-ray of his left hip, and follow up in two months. (Tr. 394.) Dr. Haghpanah also referred Plaintiff for another steroid injection in his left hip. (Tr. 394.)

On June 11, 2007, Plaintiff presented to Dr. Fuller for a follow up examination. (Tr. 386.) Dr. Fuller reported the following. Plaintiff suffered several impairments including benign hypertension, cervical radiculopathy, and sciatica. (Tr. 388.) Dr. Fuller noted that Plaintiff had only borderline control of his blood pressure and poor control of his lipids and sciatica. (Tr. 388.) Dr. Fuller recommended that Plaintiff go on a low salt, fat, and cholesterol diet and quit smoking. (Tr. 389.)

On August 3, 2007, Plaintiff presented to resident physician Dr. Stephanie Kopey at the Physical Medicine and Rehabilitation Outpatient Clinic, under the supervision of Dr. Harris, for a follow up on Plaintiff's bilateral hip pain. (Tr. 403.) Dr. Kopey reported the following upon physical examination. Plaintiff had bilateral restriction of the internal rotation of his hips, and the left hip was more restricted than the right hip. (Tr. 404.) Plaintiff suffered pain at the end range of rotation. (Tr. 404.) Plaintiff's motor strength was normal in his upper and lower extremities; his fine motor coordination was normal;

and his gait was normal with a straight cane.  (Tr. 404.)  Dr. Kopey recommended that Plaintiff continue on Voltaren, take Oxycodone, obtain another steroid injection in his right hip, continue to use a cane, attend vocational rehabilitation, and consider aquatic therapy after his steroid injection.  (Tr. 404.)  On December 10, 2007, Plaintiff obtained a steroid injection in his right hip.  (Tr. 419.)

On February 22, 2008, Plaintiff presented to Dr. Kopey for a follow up on his hip pain.  (Tr. 429.)  Dr. Kopey indicated that Plaintiff reported the following.  Plaintiff had been off of opioids for several months because he violated his opioid contract, but his pain did not become worse after discontinuing opioids.  (Tr. 429.)  Plaintiff's right hip was pain free since his last steroid injection in December 2007.  (Tr. 429.)  He stopped using a cane to ambulate until two weeks prior, when pain in his left hip began.  (Tr. 429.)  He stopped taking his Voltaren several months prior, but he could not remember why.  (Tr. 429.)  He continued to take his leftover Oxycontin, but sparingly.  (Tr. 429.)  Plaintiff "[o]verall . . . [was] feeling much better."  (Tr. 429.)  He wanted to find work and intended to speak with "Jackie" in the vocational rehabilitation department soon.  (Tr. 429.)  Dr. Kopey recommended that Plaintiff begin using Celebrex, continue to use a cane "as needed," and continue a home exercise and weight loss program.  (Tr. 430.)  She also noted that Plaintiff could call her if he wanted a steroid injection in his left hip.  (Tr. 430.)

On February 6, 2009, Plaintiff presented to Dr. Kopey for a follow up on his hip pain.  (Tr. 485.)  Dr. Kopey indicated that Plaintiff continued to use a cane to ambulate, and that Plaintiff reported the following.  (Tr. 485.)  Plaintiff suffered burning paresthesia in his left leg that grew worse over the past several months and at the time was rated at

8

7 out of 10 in severity. (Tr. 485.) Plaintiff did not associate the paresthesia with any injury. (Tr. 485.) Nothing alleviated the paresthesia, and the paresthesia became worse when Plaintiff sat. (Tr. 485.) Plaintiff had difficulty sitting and standing for long periods of time; he was not sleeping well; and he believed his Celebrex was not helping him as much as it had in the past. (Tr. 485.)

Upon physical examination, Dr. Kopey reported the following. Plaintiff's motor strength was normal in his upper and lower extremities; his fine motor coordination was normal; and his gait was normal. (Tr. 486.) Dr. Kopey referred Plaintiff to the orthopedic department to consider surgical options. (Tr. 486.) Dr. Kopey further recommended that Plaintiff obtain an EMG to determine whether he suffered "peroneal neuropathy versus radiculopathy"; undergo aquatic physical therapy; increase his Celebrex; continue to use a cane, perform his home exercise program, and lose weight; call Dr. Kopey if he wanted another left hip steroid injection; and follow up in two to three months. (Tr. 486.)

On March 2, 2009, Plaintiff presented to Dr. Raymond W. Liu at the orthopedics department upon referral from Dr. Kopey with complaints of right hip pain. (Tr. 474-77.) Dr. Liu noted that Plaintiff "failed extensive conservative management." (Tr. 477.) Dr. Liu indicated that he instructed Plaintiff to obtain Medicaid status, see his primary care physician and dentist for a preoperative work-ups, and then return to the orthopedics department. (Tr. 477.)

On March 3, 2009, Plaintiff underwent an NCS/EMG with Dr. Lixin Cui, M.D., upon referral from Dr. Kopey. (Tr. 474.) Dr. Cui reported that "[t]here is no electrodiagnostic evidence of right LS radiculopathy." (Tr. 474.) X-rays taken the same

day revealed moderate degenerative changes in Plaintiff's right hip and minimal changes in the left hip.  (Tr. 478.)

On June 11, 2009, Plaintiff presented to Dr. Kopey for a follow up on his hip pain.  (Tr. 498.)  Dr. Kopey reported upon examination that Plaintiff's gait was antalgic with a straight cane.  (Tr. 499.)  Dr. Kopey indicated that Plaintiff "is disabled until [total hip replacement] and rehab post surgery completed." (Tr. 499.)  In the meantime, Dr. Kopey recommended that Plaintiff continue to take Celebrex, use a cane, and perform his home exercise and weight loss program; call if he wanted another steroid injection in his left hip; and follow up in two to three months.  (Tr. 499.)

### C. Hearing Testimony

#### 1. Plaintiff's Testimony

Plaintiff testified at his hearing as follows.  Plaintiff stopped working at his last job because the company moved out of the country.  (Tr. 13.)  He suffered pain in his low back and right hip that extended down his leg.  (Tr. 18.)  He also suffered pain in his left hip.  (Tr. 19.)  His physical therapist gave him a cane in 2007, and he presently used the cane all of the time.  (Tr. 14.)  He cooked "sparingly" and could not do "too much" cleaning because it required bending.  (Tr. 15.)  He had been unable to go grocery shopping for a year because it was difficult to stand, walk, and lift.  (Tr. 16, 17.)  He could lift only five pounds.  (Tr. 16.)  He could stand for 20 to 25 minutes at a time before he needed to sit, and he could sit for 20 to 25 minutes before he needed to stand.  (Tr. 17.)  He had trouble going up and down stairs.  (Tr. 20.)  He stopped doing his physical therapy because it was "strenuous" and caused him more pain.  (Tr. 15.)  His Celebrex medication did not cause side effects, but it did not relieve his pain very

well.  (Tr. 16.)  Aside from taking medication, the only thing Plaintiff did to alleviate his pain was change positions.  (Tr. 20.)  He was waiting to obtain Medicare before he underwent a hip replacement.  (Tr. 19.)

### 2. The VE's Testimony

The ALJ posed the following hypothetical to the VE:

> Please assume the following limitations: Could lift up to 20 pounds occasionally and 10 pounds frequently, could sit for six hours in an eight-hour day but could only stand or walk for a total of two hours in an eight-hour day, never climb ladders, ropes or scaffolds, only occasionally climb ramps and stairs, could only occasionally kneel, crouch and crawl.

(Tr. 24.)  The VE testified that such a hypothetical person could not perform Plaintiff's past relevant work.  (Tr. 24.)  The ALJ then asked whether such an individual with Plaintiff's work background, age, and education could perform other work.  (Tr. 24.) The VE testified that such an individual could perform other work as a bench assembler (for which there were 400 jobs in the region and 70,000 jobs in the nation), wire worker (for which there were 500 jobs in the region and 70,000 jobs in the nation), and final assembler (for which there were 700 jobs in the region and 100,000 jobs in the nation). (Tr. 24-25.)

The VE further testified as follows.  The hypothetical person could perform the jobs to which the VE testified if, additionally, he could only occasionally operate foot controls with his right leg and required the use of a cane.  (Tr. 25.)  The hypothetical person also could perform the jobs to which the VE testified if he needed to alternate positions, but only so long as changing positions did not prevent him from using his hands frequently—that is, only if he could still use his hands more than two-thirds of the time.  (Tr. 25-26.)  If the hypothetical person were off task for 8 to 10 percent of the time

11

in addition to normal work breaks, however, he would not be able to do the work to which the VE testified. (Tr. 26-27.)

The VE confirmed that his testimony was consistent with the Dictionary of Occupational Titles and based on his experience and data from the Department of Labor and the Bureau of the Census. (Tr. 25.)

### III.   STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905

12

F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV.   SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since April 1, 2005, the alleged onset date.

3. The claimant has the following severe impairments: osteoarthritis of the hips; degenerative disc disease; hypertension and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of sedentary work . . . . The claimant can do the following: lift 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8 hour day; stand or walk for a total of 2 hours in an 8 hour day; never climb ladders, ropes or scaffolds; only occasionally climb ramps or stairs; occasionally kneel, crouch or crawl; only occasionally operate foot controls on the right leg; and periodically

> needs to use a cane.
>
> 6. The claimant is unable to perform any past relevant work.
>
> . . . . .
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2005 through the date of this decision.

(Tr. 37-42.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that

the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy,* 594 F.3d at 512.

> **B.  The ALJ's Credibility Assessment of Plaintiff's Subjective Complaints of Pain**

Plaintiff contends that the ALJ failed to properly assess the credibility of Plaintiff's subjective complaints of pain.  For the following reasons, the Court disagrees.

It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability.  *See Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 538 (6th Cir. 1981)*, *cert. denied*, 461 U.S. 957 (1983).  When a claimant complains of disabling pain, the Commissioner must apply a two step test to determine the credibility of such complaints that is known as the "Duncan Test."  *See Felisky v Bowen, 35 F.3d 1027, 1038-39 (6th Cir. 1994)* (citing *Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986)*).  First, the Commissioner must examine whether the objective medical evidence supports a finding of an underlying medical condition that could cause the alleged pain.  *Id.*  Second, if there is such an underlying medical condition, the Commissioner must examine whether the objective medical evidence confirms the alleged severity of pain or, alternatively, whether the objectively established medical condition is of such a severity that it can reasonably be

15

expected to produce the alleged severity of pain. *Id.* The Duncan Test does not require objective evidence of the alleged pain itself. *Id.* at 1039. The ALJ must consider all of the relevant evidence, including the following:

> (1) the claimant's daily activities;
>
> (2) the location, duration, frequency, and intensity of the claimant's alleged pain;
>
> (3) precipitating and aggravating factors;
>
> (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
>
> (5) treatments other than medication that the claimant has received to relieve the pain; and
>
> (6) any measures that the claimant takes to relieve his pain.

*See Felisky*, 35 F.3d at 1039-40 (citing 20 C.F.R. § 404.1529(c)).

Courts are not required to discuss all of the relevant factors; an ALJ may satisfy the Duncan Test by considering most, if not all, of the relevant factors. *Bowman v. Chater*, 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam). However, the ALJ must be clear why he finds that a claimant's subjective statements are not credible:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

S.S.R. 96-7p, 1996 WL 374186, at *2 (1996).

16

Here, the ALJ found that Plaintiff had underlying medical conditions that could cause his pain—namely, Plaintiff's osteoarthritis of the hips and degenerative joint disease. The ALJ also examined whether Plaintiff's subjective complaints were supported by the objective medical evidence or could otherwise be expected to result from his medical condition. The ALJ explained that he considered all of the evidence, including Plaintiff's testimony; and Plaintiff's testimony contained information about the relevant factors. (Tr. 40.) The ALJ discussed Plaintiff's pain, as he noted that Plaintiff suffered pain in his hips and low back, but that on December 20, 2005, Plaintiff reported his pain improved, on May 31, 2007, he had only mild tenderness in his spine, and on February 22, 2008 "he reported 'feeling much better.'" (Tr. 39.) The ALJ discussed Plaintiff's medication, as he noted that Plaintiff took Celebrex. (Tr. 40.) And the ALJ discussed Plaintiff's treatments other than medication, as he noted that Plaintiff participated in physical therapy, obtained steroid injections, and presently did not undergo treatment for his pain. (Tr. 39-40.)

Furthermore, although the ALJ's assessment of Plaintiff's credibility could have been more clear, it was sufficiently specific to make clear the weight he gave to Plaintiff's statements and the reasons for that weight. The ALJ first stated that although he found Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible. (Tr. 39.) The ALJ then juxtaposed evidence of severe symptoms with evidence that supported the conclusion that Plaintiff was not as limited as Plaintiff alleged, as follows. Although x-rays in 2005 showed that Plaintiff had severe osteoarthritis in his right hip and mild

17

osteoarthritis in his left hip, Plaintiff reported that his pain had improved. (Tr. 39.) Although a physical examination in 2006 revealed marked limitations in the internal rotation of Plaintiff's hips, there was no instability in his hips and the physician that attended to Plaintiff recommended only that Plaintiff undergo aquatic and physical therapy and obtain steroid injections in his hip. (Tr. 39.) By 2007, Plaintiff's physician reported that Plaintiff had only minimal tenderness in his spine and a mild decrease in his range of motion, and the physician observed that Plaintiff had a normal gait. (Tr. 39.) By 2008, Plaintiff reported that he felt "much better"; an EMG revealed no evidence of right lumbosacral radiculopathy; and an x-ray showed only minimal degenerative changes in his left hip and moderate degenerative changes in his right hip. (Tr. 39.) Finally, the ALJ noted that Plaintiff lost his job because his company moved to another country rather than because any impairments prevented Plaintiff from working; Plaintiff testified that he was not obtaining any treatments for his impairments; Plaintiff took only one medication—Celbrex; and Plaintiff often missed appointments. (Tr. 40.) The ALJ concluded that "after considering all of the . . . evidence . . . [Plaintiff's] subjective complaints are not as severe or limiting as alleged." (Tr. 40.)

Plaintiff has not explained how the evidence the ALJ cited in support of his credibility assessment was insufficient to support his credibility determination. Plaintiff only suggests that the evidence supports the conclusion that Plaintiff's subjective complaints are credible; but a decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512. Moreover, the Court is able to discern a logical nexus between the ALJ's credibility determination and his reasons for that determination. Plaintiff has not

18

provided a basis to conclude that the ALJ failed to properly assess the credibility of Plaintiff's subjective statements of pain. Accordingly, this assignment of error lacks merit.

**C.     The ALJ's Residual Functional Capacity Assessment**

Plaintiff contends that the ALJ improperly assessed Plaintiff's RFC by basing his determination on his personal medical opinion. The Court disagrees. "The ALJ, not a physician, is assigned the responsibility of determining a claimant's RFC based on the evidence as a whole." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (Nugent, J.) (citing 20 C.F.R. § 416.946(c)). Here, the ALJ relied on the opinions of state agency reviewing physicians Dr. McCloud and Dr. Congbalay, as well as the record as a whole, to determine Plaintiff's RFC. (Tr. 40.) The opinions of state agency physicians are considered expert medical opinions, S.S.R. 96-6p, 1996 WL 374180, at *1 (1996), and the ALJ gave Dr. McCloud's and Dr. Congbalay's opinions weight because he found that they were consistent with the record as a whole. (Tr. 40.) The ALJ further determined that the record as a whole, including evidence developed after Dr. McCloud's and Dr. Congbalay's RFC assessments, did not support restrictions greater than those included in his RFC determination. (Tr. 40.) Plaintiff has provided no basis to conclude that the ALJ improperly based his RFC determination on his personal medical opinion. Accordingly, this assignment of error lacks merit. *Cf. Nelms v. Gardner*, 386 F.2d 971, 973 (6th Cir. 1967) (finding that the ALJ improperly determined that the plaintiff's pain was not as severe as the plaintiff alleged based on personal observations and facts regarding the plaintiff's physical condition without citation to any evidence).

19

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

<u>s/ *Nancy A. Vecchiarelli*</u>
U.S. Magistrate Judge

Date: October 24, 2011